IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SPACETIME3D, INC.<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA,<br>INC.,<br><br>　　　　Defendants. | Civil Action No.  2:19-cv-00372-JRG<br><br>JURY TRIAL DEMANDED |

**SPACETIME3D'S OPPOSITION TO DEFENDANTS'
MOTION TO EXCLUDE MICHAEL LASINSKI'S OPINIONS
AND TESTIMONY UNDER FED. R. EVID. 702 AND _DAUBERT_**

████████████████████████████████████

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................1

III.    LEGAL STANDARD.............................................................................................3

IV.     ARGUMENT ..........................................................................................................4

      A.      Mr. Lasinski's use of similar app prices to determine consumer
            willingness to pay was proper and reliable. ..............................................4

      B.      Mr. Lasinski Properly Considered ███████████████████
            ██████████████████████. .................................7

      C.      Mr. Lasinski's Initial 70/30 Apportionment—in Samsung's Favor—is
            Grounded in the Facts of the Case and is Consistent with Methodology
            Employed by █████████████████████████...................8

      D.      Mr. Lasinski's Reliance on Usage Data to Further Apportion the
            Revenue Flowing to SpaceTime Was Proper. .......................................13

V.      CONCLUSION......................................................................................................15

████████████████████████████

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blue Spike, LLC v. Huawei Techs. Co.*,
No. 6:13-CV-679, 2016 WL 9286102 (E.D. Tex. Oct. 14, 2016) ..........................................14

*Content Guard Holdings, Inc. v. Amazon.com, Inc.*,
No. 2:13-CV-1112-JRG, 2015 WL 11089749 (E.D. Tex. Aug. 6, 2015)...........................3, 11

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)..............................................................................................................3

*Fujifilm Corp. v. Motorola Mobility LLC*,
2015 WL 1737951 (N.D. Cal. Apr. 8, 2015) ......................................................................11

*Innovation Scis., LLC v. Amazon.com, Inc.*,
No. 4:18-CV-474, 2020 WL 4201925 (E.D. Tex. July 22, 2020) ..........................................13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
694 F.3d 51 (Fed. Cir. 2012)................................................................................................10

*Micro Chemical, Inc. v. Lextron, Inc.*,
317 F.3d 1387 (Fed. Cir. 2003)...........................................................................................3, 6

*Pipitone v. Biomatrix, Inc.*,
288 F.3d 239 (5th Cir. 2002) ................................................................................................6

*Realtime Data LLC v. EchoStar Corp.*,
No. 6:17-CV-00084-JDL, 2018 WL 6266301 (E.D. Tex. Nov. 15, 2018)........................9, 13

*Robocast, Inc. v. Microsoft Corp.*,
No. 10–1055–RGA, 2014 WL 705288 (D. Del. Feb. 20, 2014)............................................10

*ROY-G-BIV Corp. v. ABB, Ltd.*,
No. 6:11-CV-622, 2014 WL 12465449 ...............................................................................10

*Salazar v. HTC Corp.*,
No. 2:16-cv-01096-JRG-RSP, 2018 WL 1783157 (E.D. Tex. Apr. 13, 2018)...................5, 7

*Sanofi-Aventis Deutschland GmBH v. Glenmark Pharm. Inc., USA*,
No. 2:07-cv-5855, 2011 WL 383861 (D.N.J. Feb. 3, 2011) ................................................ 11

*Summit 6, LLC v. Samsung Elecs. Co.*,
802 F.3d 1283 (Fed. Cir. 2015)...............................................................................................4

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)................................................................................9

*United States v. 14.38 Acres of Land*,
    80 F.3d 1074 (5th Cir. 1996) ................................................................................13

*VirnetX, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308 (Fed. Cir. 2014)............................................................................10

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010) ............................................................................12

████████████████████████

## **TABLE OF EXHIBITS**

| Exhibit | Description |
|---------|-------------|
| A | Expert Report of Michael J. Lasinski dated December 11, 2020 |
| B | Errata to Expert Report of Michael J. Lasinski dated January 16, 2021 |
| C | Excerpt of Expert Report of Ravin Balakrishnan dated December 18, 2020 |
| D | Expert Report of Vincent E. O'Brien, *Apple Inc. v. Samsung Elecs. Co., Ltd., et al.*, No. 11-cv-01846-LHK (N.D. Cal.) (SAMSUNG-ST3D-0225419) |
| E | Excerpt of Expert Report of Stephen L. Becker, Ph.D. |
| F | SAMSUNG-ST3D-EM-0458702 |
| G | SAMSUNG-ST3D-EM-0493877_EN |
| H | SAMSUNG-ST3D-0227851 |
| I | Exhibit SLB-5 to Expert Report of Stephen L. Becker, Ph.D. |
| J | SAMSUNG-ST3D-EM-1023841 |
| K | Supplemental Expert Report of Michael J. Lasinski dated February 5, 2021 |
| L | Excerpt of Trial Transcript of *Apple Inc. v. Samsung Elecs. Co., Ltd., et al.*, No. 11-cv-01846-LHK (N.D. Cal.) (Aug. 16, 2012) |

## I.    INTRODUCTION

In an effort to keep relevant and reliable expert opinions from the jury that could result in a substantial damages award for Samsung's infringement of the Asserted Patents, Samsung throws the kitchen sink at SpaceTime's damages expert, Michael Lasinski, looking for some argument that will stick. None of Samsung's arguments holds up. In fact, Samsung fails to mention that its own damages expert in *Apple v. Samsung* used a damages methodology nearly identical to Mr. Lasinski's, showing that Samsung believes the model is reliable when used for its own benefit.

*First*, Samsung argues that Mr. Lasinski should have decreased the price of similar apps that he considered in calculating consumers' willingness to pay for the patented features, but such arguments go to the weight, not the admissibility, of Mr. Lasinski's opinions. *Second*, Samsung argues that Mr. Lasinski's opinion that the parties would agree to an industry-standard 70/30 revenue split—with 70% going *to Samsung* and the remaining 30% to be further apportioned between the parties—is "devoid of any facts relating to this case," Dkt. 124 at 11. To the contrary, that split is rooted in Mr. Lasinski's analysis of the *Georgia-Pacific* factors and in the case-specific fact that Samsung would assume the role of designing, creating, testing, and programming the patented features, as well as maintaining the features once they have been launched. *Third*, Samsung argues that Mr. Lasinski should have further whittled down the customer usage data on which he relied for a second apportionment step, but such quibbles with the *calculation* of data—not with the methodology of employing usage data itself—again goes to the weight, not the admissibility, of Mr. Lasinski's opinions. And Samsung's recently produced usage data confirms that Mr. Lasinski's usage data calculation was not only appropriate, but extremely conservative.

## II.    BACKGROUND

SpaceTime asserts that Samsung infringes U.S. Patent Nos. 8,881,048; 9,304,654; and

1

██████████████████████████████████

9,696,868 (the "Patents-in-Suit"). The Patents-in-Suit are directed to specific systems and methods for easily, efficiently, and intuitively interacting with and switching between applications operating on a computing device by switching between individual, active applications in a two-dimensional (2D) space and images of those applications in a stack displayed in three-dimensional (3D) space. Three aspects of Samsung's accused devices infringe the Patents-in-Suit: (1) the "thumbnail view" of the Recents feature that allows users to navigate and switch between open apps; (2) the "stack view" of the preloaded Samsung Internet browser that allows users to navigate and switch between open webpages; and (3) the "stack view" of the preloaded Google Chrome browser that allows users to navigate and switch between open webpages.

In rendering his damages opinions, Mr. Lasinski considered Samsung's sales data produced through September 2020 to calculate that █████████████████████████████████ ██████████████████████ This royalty base calculation is undisputed. Mr. Lasinski then determined the price that users of the accused products would be willing to pay for the features enabled by the Patents-in-Suit, using two different inputs. He used as his primary input the lowest of the prices of three different Android applications ("apps") that have functionalities similar to the patented features. In identifying these similar apps, Mr. Lasinski relied on the opinions of SpaceTime's technical expert, Dr. Ravin Balakrishnan, and Samsung also does not dispute the propriety of Mr. Lasinski's reliance on the technical expert in this regard. In addition to the price of the similar apps, Mr. Lasinski also used the median price of Android apps available for purchase through the Google Play Store to calculate a floor for a reasonable royalty rate in this matter.

Mr. Lasinski then apportioned the price that users would be willing to pay to isolate the value attributable to the Patents-in-Suit. First, accounting for the specific fact that, in this case, Samsung would play the role of developing, writing code for, and implementing the patented

██████████████████████████████████████

feature for its operating system and for the Samsung Internet browser, Mr. Lasinski opined that Samsung would be akin to an app developer in the hypothetical negotiation between the parties. Accordingly, Mr. Lasinski analogized to the established 70/30 revenue-sharing arrangement between an app developer and an app store like the Samsung Galaxy Store, assigned 70% of the revenue to Samsung, and left the remaining 30% of revenue for further apportionment between the parties. Next, Mr. Lasinski further apportioned that 30% by taking into account Samsung's own documents reflecting ██████████████████████████████████.[1] Multiplying the remaining 30% to be apportioned by the ███████████, Mr. Lasinski concluded that ████████████████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████

## III.    LEGAL STANDARD

"Whether proffered evidence should be admitted in a trial is a procedural issue not unique to patent law, and therefore . . . [the] decision whether to admit expert testimony [is governed by] the law of the regional circuit." *Micro Chemical, Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1390-91 (Fed. Cir. 2003). An expert's testimony is admissible if it "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "A [district] judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another." *Content Guard Holdings, Inc. v. Amazon.com, Inc.*, No. 2:13-CV-1112-JRG, 2015 WL 11089749, at *4 (E.D. Tex. Aug. 6, 2015) (citation omitted).

---

[1] A month after Mr. Lasinski's report was served, Samsung produced a document demonstrating that this usage data was extremely conservative. Mr. Lasinski served a supplemental report taking this late-produced data into account. *See infra* Section IV.D.

███████████████████████████████████████████████████████

Indeed, "[t]o the extent [an expert's] credibility, data, or factual assumptions have flaws, these flaws go to the weight of the evidence, not to its admissibility. . . . Where the methodology is sound and the evidence relied upon is sufficiently related to the case, disputes over the expert's credibility or over the accuracy of the underlying facts are for the jury." *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1299 (Fed. Cir. 2015).

## IV. ARGUMENT

### A. Mr. Lasinski's use of similar app prices to determine consumer willingness to pay was proper and reliable.

In order to determine the amount that consumers would be willing to pay for the features enabled by the Patents-in-Suit, Mr. Lasinski considered (1) the prices of apps with functionalities similar to the patented features, and (2) the median price of paid Android apps available for purchase in the Google Play Store. Ex. A (Lasinski Rpt.), ¶¶ 72-80. For the first input, Mr. Lasinski relied on the opinions of SpaceTime's technical expert, Dr. Balakrishnan, who ████████████████

█████████████████████████████████████████████████████████

██████. Ex. C (Balakrishnan Rpt.), ¶¶ 140-143. Of three such similar apps identified by Dr. Balakrishnan, Mr. Lasinski ███████████████████████████████████████

██████████████████████████████████. Ex. A, ¶ 80. For the second input, Mr. Lasinski ██████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████ Ex. A, ¶ 76 & n.157.

Samsung argues that Mr. Lasinski failed to apportion for the features of these similar apps that are not related to the technology. According to Samsung, Mr. Lasinski should not have relied on ███████████████████████████████ but rather should have reduced the

4

██████████████████████████████

price to account for specific features of those apps that do not involve the patented features. Samsung also tacks on an argument that there are free versions of these two apps available, and Mr. Lasinski erred by relying on the paid versions rather than their free counterparts. Even if Samsung were correct (it is not), this argument—about the extent to which the paid and free versions of ███████████████████ include non-patented features—is a factual issue that must be resolved by the jury. For instance, in *Salazar v. HTC Corp.*, No. 2:16-cv-01096-JRG-RSP, 2018 WL 1783157 (E.D. Tex. Apr. 13, 2018), the plaintiff's damages expert "based his reasonable-royalty analysis on a third-party, stand-alone device" that he believed was a proper proxy for the accused functionality. *Id.* at *1. The defendant challenged the use of the proxy on the ground that the expert failed to consider the value of non-patented features in that proxy, and the plaintiff countered that its expert "*did* apportion out the value associated with the non-patented features, but that value is zero." *Id.* This Court refused to exclude the expert's testimony:

> [T]he parties present conflicting facts about the extent to which the [proxy] includes non-patented features. [Plaintiff's expert] recognizes his obligation to consider such non-patented features, but concludes there is nothing to consider with respect to the [proxy] device itself. Thus, based on the facts as [the expert] sees them, his methodology is correct. **Although [defendant] is free to attack [the expert's] factual premises at trial, application of a correct methodology to disputed facts is not a reason to exclude an opinion as unreliable.**

*Id.* (emphasis added) (citation omitted).

So too here. Mr. Lasinski ████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████ Ex. C,

¶¶ 141, 143. As he understood the primary purposes of these apps to be the same as the purpose of the patented features, *i.e.*, to enable easier navigation of and switching between apps, he did not

██████████████████████████████████████

further apportion the price of the apps to account for potential non-patented features of the apps that are at best ancillary to their primary purpose and function. Again, to the extent that Samsung or its expert disputes that app navigation and selection is the primary purpose of ████████ ████████████ or assert that the apps have significant non-patented features that should have been apportioned, "it is not the role of the trial court to evaluate the correctness of [those] facts." *Micro Chem.*, 317 F.3d at 1392; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("[T]he trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system." (citation omitted)).

Samsung's additional argument that Mr. Lasinski should have accounted for the free versions of the similar apps also fails for the same reasons. This argument merely tees up another factual dispute on whether the free versions are sufficiently similar to the patented features to serve as a basis to calculate consumers' willingness to pay. Samsung asserts that the free versions are sufficient and that "features that are included with both the free and paid versions of these apps do not contribute substantially to the value of the paid versions." Dkt. 124 at 9. Mr. Lasinski ████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████ Ex. A, ¶ 75. Further, when the parties were engaging in the hypothetical negotiation, Samsung was negotiating for technology to include as part of the operating system on its smartphones and tablets: the patented feature as included in Samsung's operating system would not have contained advertisements or continually nudged its users to make in-app purchases. The paid versions of the similar apps—which are free of ads and in-app purchases—thus serve as the proper proxy for determining consumers' willingness to pay.

████████████████████████████████████████████

Ultimately, however, just as with Samsung's argument about apportioning the $4.99 price to factor out non-patented features, this argument about the free counterparts of the similar apps is a factual dispute that must be determined by the jury. While Samsung "is free to attack [Mr. Lasinski's] factual premises at trial, application of a correct methodology to disputed facts is not a reason to exclude an opinion as unreliable." *Salazar*, 2018 WL 1783157, at *1.

**B.**    **Mr. Lasinski Properly Considered t** ████████████████████████████████
████████████████████████**.**

Mr. Lasinski also considered █████████████████████████████████████████
████████████████████████████████████████████████. Samsung attacks the use of ████████████████ on the ground that Mr. Lasinski does not present evidence that the universe of all paid apps is comparable to SpaceTime's technology. *See* Dkt. 124 at 15. As Samsung concedes, however, Mr. Lasinski did present evidence of comparability of the apps with similar functionality as the patented features, *id.* (***"Other than the three apps discussed above***, Mr. Lasinski present no evidence . . ."), and Mr. Lasinski expressly opined that ████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Ex. A, ¶ 14. As to the median price, the median is also an appropriate data point to calculate the floor because it is conservative, both when compared to the prices of similar apps and when compared to the *average* price of all apps for sale in the Google Play Store. *See* Ex. A, ¶ 76 n.157.

Samsung also neglects to mention that ████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████      *See* Ex. D, ¶ 58. ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

The fact that Samsung's own damages expert used a valuation approach similar to Mr. Lasinski's demonstrates the relevance, and perhaps appropriateness, of using app pricing as a check on calculating a reasonable royalty rate.

### C.     Mr. Lasinski's Initial 70/30 Apportionment—in Samsung's Favor—is Grounded in the Facts of the Case and is Consistent with Methodology Employed by ████████████████████████████████.

After determining the two starting points on the amount that consumers would be willing to pay for the patented features ████████████████████, Mr. Lasinski proceeded to apportion those prices to isolate the value attributable to the Patents-in-Suit. As the first step in his apportionment analysis, Mr. Lasinski opined that ████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████ Ex. A, ¶ 84. This initial apportionment step, ████████████████████████████ was rooted in Mr. Lasinski's

███████████████████████████████████████

analysis of the *Georgia-Pacific* factors, as well as facts specific to this case, namely ████████
███████████████████████████████████████████████ *Id.* at ¶ 81; *see id.*
at ¶ 152 (analyzing *Georgia-Pacific* factor five and noting that ████████████████
███████████████████████████████). Indeed, only upon
determining that ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████

    Samsung incorrectly argues that this initial 70/30 apportionment is "indistinguishable from the 25% rule of thumb that has been 'emphatically rejected' by the Federal Circuit." Dkt. 124 at 11. In *Uniloc*, the Federal Circuit rejected the 25 percent rule of thumb "because it fails to tie a reasonable royalty base to the facts of the case at issue." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011). While *Uniloc* bars an expert from "blindly rely[ing] upon an economic theorem . . . without tying the analysis to the specific and particular facts of the case at hand," "**a damages model envisioning a hypothetical negotiation in which the parties bargain for respective shares of the economic benefit of a negotiation is not per se inadmissible merely because it invokes a percentage split—so long as the analysis is grounded in the specific facts of the case at hand**." *Realtime Data LLC v. EchoStar Corp.*, No. 6:17-CV-00084-JDL, 2018 WL 6266301, at \*11 (E.D. Tex. Nov. 15, 2018) (emphasis added).

    Here, far from blindly relying on an economic theorem, Mr. Lasinski concluded t████████
███████████████████████████████████████████
███████████████████████████████ It is undisputed that there is
an established 70/30 allocation of revenues between an app developer and an app store. Ex. A,

████████████████████████████████████

¶¶ 83, 85 (citing Terms and Conditions of Samsung Galaxy Store's agreement with app developers and noting same revenue share between app developers and Apple, Google, Amazon, and Microsoft). Mr. Lasinski specifically opined that ██████████████████████████████ ████████████████████████████████████ ███████████████████████████████

- ████████████████████████████████████ ████████████████████████████████████
- ████████████████████████████████████ ███████████████████████████
- ████████████████████████████████████ ██████████████████████

Given Mr. Lasinski's explanation of the 70/30 revenue split and his choosing to apply the split based on case-specific facts, his opinions are nothing like those in the inapposite cases cited by Samsung. *See* Dkt. 124 at 11-12 (citing *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 69 (Fed. Cir. 2012) (rejecting one-third apportionment that "appears to have been plucked out of thin air" with no supporting analysis); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1332-33 (Fed. Cir. 2014) (rejecting use of Nash theorem because expert "seeking to invoke the theorem as applicable to a particular situation [failed to] establish that fit"); *Robocast, Inc. v. Microsoft Corp.*, No. 10–1055–RGA, 2014 WL 705288, at *1-*2 (D. Del. Feb. 20, 2014) (denying motion for reconsideration where expert opinion initially based in 50/50 split was excluded and plaintiff then relied on 70/30 split from Microsoft's app developer agreement without explanation of why agreement was analogous); *ROY-G-BIV Corp. v. ABB, Ltd.*, No. 6:11-cv-622, 2014 WL 12465449,

at *3 (E.D. Tex. Aug. 1, 2014) (rejecting apportionment supported only by "single sentence" that expert's conclusion is "based on discussion with" plaintiff's personnel and infringement expert)).

By contrast, *Content Guard Holdings v. Amazon.com, Inc.*, No. 2:13-cv-01112, 2015 WL 11089749 (E.D. Tex. Aug. 6, 2015) is instructive. *Id.* at *8 (declining to exclude expert report employing Rubenstein bargaining model, where expert "identifies the premises of the Rubenstein model and attempts to explain how they apply to the facts of this particular case" and "uses Defendant-specific evidence as inputs to some of the premises"); *see Fujifilm Corp. v. Motorola Mobility LLC*, 2015 WL 1737951, at *13 (N.D. Cal. Apr. 8, 2015) (declining to exclude opinion of plaintiff's damages expert whose royalty rate calculation was allegedly a mere "variation of the 25 percent rule" because expert explained his royalty rate through analysis of *Georgia-Pacific* factors and facts about defendant's research and development expenses); *Sanofi-Aventis Deutschland GmBH v. Glenmark Pharm. Inc., USA*, No. 2:07-cv-5855, 2011 WL 383861, at *12-13 (D.N.J. Feb. 3, 2011) (denying motion *in limine* to preclude opinions of expert who allegedly "mechanically applied a 50/50 profit split" because expert "did not arbitrarily apply a 50/50 profit split . . . but rather based his reasonable royalty analysis on the specific facts of this case"). Mr. Lasinski grounded his apportionment in his analysis of the *Georgia-Pacific* factors, *see* Ex. A, ¶¶ 141-181, and on case-specific facts about the role that Samsung would have assumed in developing the patented features and integrating them in Samsung devices. Mr. Lasinski thus "provides sufficient explanation of his analysis to distinguish this case from [others], where the expert fails to follow any 'discernable methodology' and is essentially 'a black box into which data is fed at one end and from which an answer emerges at the other.'" *Fujifilm*, 2015 WL 1737951 at *13.

Samsung next introduces a red herring by arguing that "there are effectively three parties that would share in the hypothetical infringing app sale contemplated by Mr. Lasinski": the

developer of the app, the party that owns the patent that the app infringes, and the party that provides the marketplace for the app. Dkt. 124 at 12. According to Samsung, "[t]he first two parties would split the 70% between them in some proportion, and the 30% going to the store owner would have nothing to do with the royalty determination." *Id.* The Court should reject Samsung's efforts to introduce a "store owner" into the revenue split, which deviates from the well-established bilateral structure of the hypothetical negotiation as between the patentee and infringer. *See, e.g.*, *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010). Indeed, Samsung's own damages expert recognized that the proper parties to the hypothetical negotiation here are Samsung, on the one hand, and Eddie Bakhash and/or SpaceTime, on the other, with no mention of a hypothetical store owner. Ex. E, ¶ 14 & n.12.

Finally, Samsung fails to mention that i

Indeed, for all its doubt now that "Samsung's revenue sharing contracts with app developers are in any way analogous to a patent license negotiation," Dkt. 124 at 11,



Ex. D, ¶ 69. That both Mr. Lasinski and ▮▮▮▮▮ relied on ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮ demonstrates the general acceptability of this industry-standard revenue-sharing plan. The Court should find Mr. Lasinski's methodology to be sound so long as it finds that the 70/30 application is based on the facts of the specific case.

12

██████████████████████████████████████████████

### D.    Mr. Lasinski's Reliance on Usage Data to Further Apportion the Revenue Flowing to SpaceTime Was Proper.

To further apportion the 30% of revenue remaining after Samsung receives the first 70%, Mr. Lasinski applied a second apportionment step by relying on ██████████████████████ █████████████████████████████████████████████████████████████████████████████. Specifically, Mr. Lasinski relied on two documents: (████████████████████████████████ ██████████████████████████████████████ ████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████ Based on these Samsung documents, Mr. Lasinski opined that █████████████████████████████████████████████████████████████.

First of all, Samsung does not dispute that Mr. Lasinski's use of customer usage data is proper; it merely argues that the precise numbers that Mr. Lasinski used should have been lower. *See* Dkt. 124 at 13-14. Such arguments—that Mr. Lasinski should have accounted for alleged non-infringing alternatives in calculating usage data, which would have resulted in lower figures—go to the weight, not the admissibility, of Mr. Lasinski's opinions. *See Realtime Data*, 2018 WL 6266301, at *9 ("Defendants' factual disputes relating to [plaintiff's expert's] underlying data, however, go to the weight of the evidence, not its admissibility. Defendants will have an opportunity to cross examine [Mr. Lasinski] on the underlying facts he used to calculate his apportionment factor and the jury will determine what weight to assign his testimony."); *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); *Innovation Scis., LLC*

*v. Amazon.com, Inc.*, No. 4:18-CV-474, 2020 WL 4201925, at *3 (E.D. Tex. July 22, 2020) (issues about "arbitrary inputs" in a calculation "is an issue for trial").[2]

 Second, even if the *calculation* of usage data were an admissibility issue determined by the Court (it is not), Samsung's arguments are flawed and should be rejected. As an initial matter, it is a gross oversimplification for Samsung to say that "Recents and Samsung Internet (Tab Manager) can be viewed in multiple different GUIs, **only one** of which is accused of infringing the asserted patents." Dkt. 124 at 13. As Samsung knows, SpaceTime accuses the Recents feature of all Samsung smartphones and tablets capable of running Android Operating Systems ("OS") 5 through 8. Of that population, only those devices running OS 8 featured an alternate GUI to the infringing one, and simple math reveals that only about 11% of the accused instrumentalities were preloaded with the OS 8. This means that in the vast majority of accused instrumentalities, the **only available GUI** for Recents was precisely the infringing one. Similarly, many versions of Google Chrome, including at least the browser running on a Samsung Galaxy Note 4 running Android OS 6, also did not feature any alternate view to the infringing view. Meanwhile, although Samsung Internet did offer an alternate view, the infringing view was often set as the default view over the alternate (including at least on a Samsung Galaxy Note 5 running Android OS 7). On a Galaxy S7 running Android OS 7, the default view of the webpage-switching feature for both Chrome and Samsung Internet was the infringing view. Thus, not only does Samsung improperly press the Court to decide factual issues, it also grossly exaggerates the amount of further apportionment that Mr. Lasinski purportedly should have carried out on the usage data.

 Again challenging not the methodology of relying on customer usage data but rather the

---

[2] The lone case that Samsung cites—*Blue Spike, LLC v. Huawei Techs. Co.*, No. 6:13-CV-679, 2016 WL 9286102, at *4 (E.D. Tex. Oct. 14, 2016)—is inapposite because the case is about the design of a survey whose questions did not separate out patented and non-patented features.

*calculation* of such data, Samsung argues that Mr. Lasinski should have accounted for a spreadsheet that purportedly "shows ████████████████████████████████████ ██████████████████████ Dkt. 124 at 14. But that spreadsheet is highly unreliable and does not show what Samsung purports it shows for at least three reasons. First, while Samsung's expert has altered the columns from the original spreadsheet, it is not clear even from the original that those columns represent what Samsung says they do. For example, it is unclear how Dr. Becker arrives at ████████████████████████████████████ *Compare* Ex. H (original spreadsheet), *with* Ex. E, ¶ 177 *and* Ex. I (reconfigured spreadsheet for Becker Rpt.). Second, even assuming that the "unique devices" represent what Dr. Becker claims, Samsung never explains why ████████████████████████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████Further, Dr. Becker appears to have ████████████████████████████████████ ████████████████████████████████ but Dr. Becker's analysis results in a faulty conclusion, as it is based on data that is facially inaccurate and unreliable.

If anything, data that Samsung produced after SpaceTime filed a motion to compel, and a month after SpaceTime served Mr. Lasinski's report, confirms that ██████████████████ that Mr. Lasinski used was conservative and that ████████████████████████████████████ ████████████████████████████ *See* Ex. J (SAMSUNG-ST3D-EM-1023841); Ex. K (Lasinski Supplemental Rpt.), ¶ 8 (high end of range of royalty rates suggested by late-produced document is ████████████████████████████████████).

## V. CONCLUSION

For the foregoing reasons, the Court should deny Samsung's motion.

Dated: February 8, 2021                    Respectfully submitted,

                                           */s/ Y. Gloria Park*
                                           Max L. Tribble, Jr. – Lead Counsel
                                           Texas State Bar No. 20213950
                                           SUSMAN GODFREY, L.L.P.
                                           1000 Louisiana Street, Suite 5100
                                           Houston, Texas 77002
                                           Telephone: (713) 651-9366
                                           Facsimile: (713) 654-6666
                                           mtribble@susmangodfrey.com

                                           Matthew R. Berry
                                           Washington State Bar No. 37364
                                           SUSMAN GODFREY, L.L.P.
                                           1201 Third Ave., Suite 3800
                                           Seattle, Washington 98101
                                           Telephone: (206) 516-3880
                                           Facsimile: (206) 516-3883
                                           mberry@susmangodfrey.com

                                           Meng Xi
                                           California State Bar No. 280099
                                           SUSMAN GODFREY, L.L.P.
                                           1900 Avenue of the Stars, Suite 1400
                                           Los Angeles, California 90067
                                           Telephone: (310) 789-3100
                                           Facsimile: (310) 789-3150
                                           mxi@susmangodfrey.com

                                           Y. Gloria Park
                                           New York Bar No. 5477047
                                           SUSMAN GODFREY, L.L.P.
                                           1301 Ave. of the Americas, 32nd Fl.
                                           New York, New York 10019-6023
                                           Telephone: (212) 336-8330
                                           Facsimile: (212) 336-8340
                                           gpark@susmangodfrey.com

                                           S. Calvin Capshaw
                                           State Bar No. 03783900
                                           Elizabeth L. DeRieux
                                           State Bar No. 05770585
                                           CAPSHAW DERIEUX, LLP
                                           114 E. Commerce Ave.
                                           Gladewater, TX 75647

16

████████████████████████

Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

*Attorneys for Plaintiff SpaceTime3D, Inc.*

17

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that this document is being filed under seal pursuant to the terms of the protective order entered in this case because it contains information that Defendants have designated as Restricted - Attorneys' Eyes Only.

*/s/ Y. Gloria Park*
Y. Gloria Park

**CERTIFICATE OF SERVICE**

I certify that on February 8, 2021, I served the foregoing on all counsel of record via email.

*/s/ Y. Gloria Park*
Y. Gloria Park

18

7904446v1/015287